## GRAHAM v. FIRE INSURANCE CO.

1. EVIDENCE—INSURANCE.—An insurance policy covered the goods of G., loss, if any, payable to T. It was alleged that T. was true owner, and that G. had a pecuniary interest in it, and was under contract to insure it. *Held*, that it was competent to prove the contract between G. and T., and such evidence would not contradict the written terms of the policy.

2. IBID.—IBID.—Where personal property is insured in name of G., loss, if any, payable to T., as his interest may appear, it is competent to show why G. insured property.

3. IBID.—IBID.—ESTOPPEL.—The facts, that after insured property had been burned, the adjusters of all companies carrying insurance assembled at the place, were informed of the true ownership of the property, and then demanded of the owner minute proofs of loss, are admissible, to show estoppel on part of defendant company to deny ownership of property.

4. IBID.—IBID.—PRINCIPAL AND AGENT.—Communications between insured and his agent may be admitted, if such communications are shown to have been communicated to the insurer.

5. IBID.—PRINCIPAL AND AGENT.—Communications to an agent may be shown to bind principal, if the agent had authority to act for principal in this particular.

6. IBID.—INSURANCE.—The fact that an insurance company had admitted notice of the ownership of property, may be proved by showing its agent had admitted such fact.

7. NONSUIT—INSURANCE.—Nonsuit is improper where there is testimony going to show that the assured had an insurable interest in destroyed property, even where it is admitted that he was not the owner.

8. IBID.—IBID.—ESTOPPEL.—Where an insurance company issued a policy and accepted the premium, and there is testimony tending to show that at time of issuance of policy it had notice that assured was not true owner, this is sufficient to go to the jury, tending to show that defendant is estopped from claiming that the policy was void from its inception, because assured was not sole owner.

9. INSURANCE—ESTOPPEL.—The assured is not estopped from enforcing an insurance policy, in case of loss, because he is not the sole owner, where it appears that he has a special interest in the preservation of the property.

10. INSURANCE—INSURABLE INTEREST.—A party under contract to run a manufacturing plant for a number of years, which contract gives him great pecuniary advantages, and makes it his duty to insure the material for manufacture, &c., has an insurable interest in such articles.

11. IBID.—CHARGE.—Under the facts in this case, it was proper to charge the jury that they could only find for the defendant by finding that assured had no insurable interest in the property.

12. REQUEST TO CHARGE properly refused, because it was not upon the issues in the action.

13. CHARGE—REQUESTS TO CHARGE.—Where a Judge covers, in his general charge, the point embraced in a specific request, it is sufficient.

Before WITHERSPOON, J., Columbia, fall term, 1895. Affirmed.

Action by John M. Graham and G. H. Tilton against American Fire Insurance Company of Philadelphia.

The following is the charge of the Circuit Judge, excepting the formal parts:

Mr. Foreman, I charge you that any one may insure property against loss by fire in which he has an interest, the insurance of which is not forbidden by law on the ground of public policy. Now, what is this insurable interest? What interest does the law require in order to entitle the party who insures to recover loss upon the policy? Well, as I find it stated in section 80, page 144, 1st May on Insurance, this principle is laid down: "Whoever may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject matter of insurance, whether that advantage inures to him personally or as the representative of the rights or interests of another, has an insurable interest." At the conclusion of the same section, we find it stated generally, "Persons charged either specifically by law, custom or contract with the duty of caring for and protecting property in behalf of others, or having a right so to protect such property, though not bound thereto by law, or who will receive benefit from the continued existence of the property, whether they have or have not any title to estate, any lien upon or possession of it, have an insurable interest." Now, the test, as I understand it, and I so charge you as to this insurable interest, what constitutes an insurable interest is: Does the party insuring, does he at the time he takes out the policy of insurance and at the time of the loss, bear such a relation to the property insured as would create a liability to pecuniary loss if the property was destroyed? If so, such a person has an insurable interest in the property. Now, I was struck with the remark made by counsel for the defendant yesterday, and the propriety of it. Why do the insurance companies require the party insuring to have an interest in the property insured? It is to secure on the part of the party insured proper and reasonable care on his part to avoid

the destruction of the property by fire.    That is the object
of it; therefore, a reasonable requirement, for the protection
not only of the insurance company but of the persons who
hold policies in that insurance company.   Now, the defend-
ant's counsel has requested me to charge you that the plain-
tiff, Graham, did not have an insurable interest in the
property, under the written contract and the verbal testi-
mony as to Tilton requiring Graham to insure the property.
Under the authorities I have just cited, I cannot so charge
you, because it appears from the written contract intro-
duced in evidence that Graham was appointed by Tilton
as superintendent to take charge of, protect, and preserve
his property as best he could.   That is the sum and
substance of it; I do not pretend to quote the exact lan-
guage; I haven't time to refer to it now; that is the sub-
stance of it.   Now, when the plaintiffs come into Court,
and rely, as they do, upon this policy to establish their
right to recover judgment against the defendant, the bur-
den is upon the plaintiffs, not only in this case but every
civil case, to show and satisfy the Court and jury—that is,
the jury as to the facts—that they are entitled to the relief
that they seek, by what we call the preponderance of the
evidence, the greater weight of the evidence; that greater
weight is to be determined and ascertained by the jury, who
are made the sole judges of the evidence.   When you retire
to your jury room to determine whether a certain matter of
fact submitted to you has been established by the plaintiffs,
by the preponderance of the evidence, you take all the evi-
dence bearing upon that point; you weigh it.   It does not
depend upon the number of witnesses upon the one side or
the other, necessarily, but it is the weight you attach to
the testimony by the witnesses, one or many, and in that
way you are to decide.   Now, the plaintiffs have requested
me to charge you, that if you believe from the evidence that
Tilton put Graham in the lawful possession of the property—
that is, the property insured, as his agent or superintendent,
for the purpose of dealing with the property in the ordinary

course of business, and that if Graham was under contract
with Tilton to insure the property and keep the property
insured, that Graham had an insurable interest in the pro-
perty. I so charge you, under the authorities cited.

I am also requested to charge you by the plaintiffs, that
if Graham had possession of the property, and sustained
such relation to the property as that he might suffer pecu-
niary loss if the property was destroyed by fire, that Gra-
ham would have an insurable interest in the property. I
so charge you. I have already substantially charged you
that. Now, when plaintiffs submit this policy—that is,
the contract between the parties—and if that policy in its
terms and in its provisions, if it is free of what we call
ambiguity or doubt as to the meaning of the parties, then
I charge you, according to well established principles of
law and evidence, no parol testimony, no outside evidence
by word of mouth, can be permitted to come in and be in-
troduced to vary, modify or extend the provisions of that
policy. Now, the same rules apply to the construction of
an insurance policy as apply to the construction of any other
written instrument, except this: our courts have gone to
the extent of holding, that wherever there is doubt, or
where it is an unreasonable provision of the policy, it is to
be liberally construed in favor of the insured party. Now,
when an insurance company issues a policy, they have a
right to interpose as conditions precedent, any reasonable
conditions for their protection in the matter; in other words,
to insure good faith on the part of the party who proposes
to have his property insured. Now, it is the duty of the
Court (and it is a duty the Court cannot avoid) to construe
written instruments for the aid of the jury. When a written
contract is introduced here, it would be improper for the
Judge to just simply avoid that duty. It is the province of
the Court to construe an instrument, and see what the ob-
ligation of the party was under the contract. Now, before
going into this case further, I am satisfied that you will
not allow your fair and impartial judgments in the con-

sideration of this case to be influenced by any outside consideration.    You cannot consider, or allow that fact to effect your judgment, as to where a man lives.    It would be a sad day in this State, or any other State, when the rights of parties before a court of justice are to determined by whatever locality they happen to live in, or any outside consideration.    That does not affect the merits of the issue before the Court.

I will construe this policy in two aspects, or rather in two different views, and why?    Because waiver has been set up here—the plaintiffs have set up waiver; that they are entitled to this by the company waiving any invalidity that might exist in the policy; and they also set up notice to the agent, before this policy was issued, as to the relation existing between Tilton and Graham at the time that the policy was issued.    Now, I will construe this policy according to the view that you may take.of the issue as to waiver and notice to the agent at the time the property was insured.    I will construe the contract first, as if there was no testimony as to waiver, so you can understand it, or notice to the agent.    If you should conclude from the testimony that the defendant had no notice of the relation existing between Graham and Tilton at the time Tilton took out this policy—in that view I will charge you first as to the construction of the policy.    If there was no such notice, and no waiver, then I charge you that this policy is free from ambiguity or doubt, and that, under the terms of this policy, all that the plaintiff, Tilton, could recover from the defendant company under the express terms of the policy, would be any loss that might be ascertained and proved due the assured, J. M. Graham; and to that extent and no further, under the terms of the policy, the loss was made payable to Tilton.    In addition to that, the policy states that this insurance is upon Graham's stock of goods, and for that reason I charge you, as I have charged you—that is, upon the construction of the policy without reference to the question of waiver, or notice to the parties about the

matters to which I shall subsequently refer. It seems to me that the language of the policy is too plain—that is my judgment of it—too plain to admit of doubt on that point; I mean, construing it upon its face.

Now, as to waiver, or whether or not the defendant company had notice of the relations existing with reference to this property between Tilton and Graham, the burden is upon the plaintiffs to prove the facts sufficient to constitute a waiver, or to prove notice and bring the notice home to the defendant company of such knowledge; and it must show such knowledge or waiver in order for them to recover upon the policy by this preponderance, the greater weight of the evidence, according to the view you take of the evidence. That is one aspect of the case. Now, if you should conclude from the evidence that Mr. Jones had knowledge, if the plaintiffs have satisfied you that Jones had knowledge as an agent of the defendant of the relation existing between Tilton and Graham—that is, that Tilton was the owner and Graham was the agent or superintendent of Tilton in the hosiery stock down at the penitentiary, embraced in this policy—then I charge you, under the authorities of our own State, that if the company knew these facts, and accepted the money of Graham to pay the premium upon that policy, if they knew at the time that Graham did not have the sole ownership of that property, and yet insured the property in his name, knowing that Tilton was the real owner of the property, then I charge you, under the authorities, that the plaintiffs would be entitled to recover. And why do I charge you that? It is said by our own court of last resort (in the case of *Pelzer Manufacturing Co.* v. *Sun Fire Insurance Co.*), and the tenor of all the decisions is plainly to hold all those conditions waived which to the knowledge of the agent would make the policy void as soon as delivered, otherwise the company would knowingly receive the money of the applicant without value returned, and the whole transaction would be a fraud. That is the reason that our courts say

so; for that reason I so charge you, without reference to the facts of the case. The facts are entirely for you.

Mr. Trenholm: And if they did not have knowledge, the defendant would be entitled to recover.

The Court: As a matter of course; I stated to you that the burden is upon plaintiff to show that; and if they fail to show that, of course the policy must stand.

I have been requested to charge you by plaintiff's counsel: "In an action on an insurance policy, defendant cannot claim that the plaintiff is not entitled to recover, by reason of his failure to comply with a requirement of the policy, unless the failure to comply with such requirement is specifically set up in the answer." I so charge you. There are two failures, as alleged here, and as I have already indicated to you, set up in this policy, and you cannot go beyond it. "In this action, defendant specifically alleges in its answer the failure of the plaintiff, J. M. Graham, to comply with two only of the requirements of the policy, to wit: (1) the requirement that the interest of the plaintiff, J. M. Graham, shall be truly stated in the policy. (2) The requirement that his interest shall be that of unconditional and sole ownership, unless otherwise provided by agreement in writing, endorsed on the policy or added thereto. Hence the defendant cannot claim that it is released from liability by the failure of the plaintiff, Graham, to comply with any of the other requirements of the policy." I charge you that.

Now as to notice upon this question of waiver. I have been requested to charge you that "notice is either actual or constructive. Actual notice is where a party has direct and positive knowledge or information as to the fact, with notice of which he is sought to be charged." I so charge you. "Constructive notice is where a party has knowledge or information of such facts as put him upon the inquiry, and that inquiry properly conducted would disclose the fact with notice of which he is sought to be charged." I so charge you.

I have been requested to charge that "notice to the agent

is notice to the principal. Therefore, if the jury believe from the evidence that Allen Jones was the agent of the defendant company in the issuance and delivery of the policy sued on, and that at the time of the issuance and delivery thereof he had notice, actual or constructive, of the facts as to the title to the insured property, then the law presumes that the defendant company also had notice of them, and charges it with such notice." I so charge you; leaving entirely with you whether or not the testimony here establishes such fact, whether or not it satisfies you that Jones had such notice. "Notice to the agent's clerk employed in the business of the agency is notice to the agent himself, and through him to the company." I charge you that, with this modification, that notice to the agent or clerk employed bind the company only to the extent of the authority conferred upon that clerk or sub-agent, only to that extent; and in order to bind the principal, the party claiming the benefit of it must show that he had authority to bind the principal with reference to that matter. Now I charge you under these general instructions that, if at the time of issuing of that policy, John Graham had no insurable interest, and you conclude that the company had no notice, as indicated here in the instructions—had no notice of the relation existing between Tilton and Graham, that Tilton was the owner and Graham the agent—then I charge you, if Graham had no insurable interest, and the company had no knowledge of their relation, plaintiff cannot recover under this policy, and your verdict should be for the defendant. If, upon the other hand, you should conclude that the plaintiff did have notice of such relation—I mean, before the policy was issued—

Mr. Muller: You mean, if the defendant had notice.

The Court: If the defendant company had notice of such relation between Tilton and Graham before the issuing of the policy, then I charge you the plaintiff is entitled to recover all that they lost of the insured property not covered by the concurrent insurace, to the extent of $1,000, according to the proof you have heard here.

There is another view: if you conclude that the company had no notice of the relation between Graham and Tilton, that Tilton was the owner and Graham the agent, but if you should conclude that Graham had an insurable interest in this property at the time of the taking out of the policy, and time of the loss and destruction of the property, then I charge you the company is liable to Tilton to the extent of Graham's insurable interest. I charge it to you upon this principle, that if the company accepted the premium and insured Graham, and it appears that Graham had an insurable interest, it inures under that policy to Tilton; because it would be unjust for the company to insure the property of Graham, take the premium upon the policy, and simply because he didn't have entire and sole ownership of the property, to deprive him of indemnity to the extent to which he had an insurable interest. I have had no authority upon that, but I charge you that as matter of law, and let the other Court, if necessary, settle it.

Now, as to the question of waiver, I have been requested to charge you in the eleventh request: "If the jury believe from the evidence that the company, after learning through its adjuster, Mr. William Douglas, the facts as relied on, constituting the alleged failure of the plaintiff, J. M. Graham, to comply with the requirements of the policy set up in the answer, led the insured to believe that it still recognized the validity of the policy, by inducing and encouraging them to incur expense and trouble in preparing and furnishing proofs of loss, then the defendant company is estopped from instituting on such alleged failure, or any other alleged grounds of objection then known to it, as a defense in this action." I so charge you; and in that connection, I wish to charge you further upon the subject of waiver. Waiver is nothing more than estoppel, where the law says that with certain facts before a party, and with these facts before him, he induces another party to act upon these facts, encourages and induces him to act, rely only upon those facts, that then the party is estopped from after-

wards availing himself of any advantage that might. result from the existence of those facts; in other words, if there was a loss in this case—I mean, if the policy was invalid or defective in any way so as to affect its validity, and the adjuster after he came on here, by word or act induced the assured parties to do something to their prejudice, relying upon the validity, and the adjuster indicated to them by his words or acts that he intended to hold it valid, then the company would be estopped, would be prohibited in law from now insisting upon any such invalidity. Now, I charge you, in connection with this, that you may better understand this matter of waiver—if the insurer had full knowledge of the facts which would avoid the policy, nevertheless executed and delivered it, or if after its delivery they acquired knowledge of such facts, and subsequently treated as valid and binding, by any acts, words or conduct, which might reasonably lead the insured to suppose himself to be still insured, they will have waived the defect, and be estopped from asserting it. Waiver is usually a question of intent. By intent is meant not merely the understanding of the parties, but their intention as indicated by their language and conduct; therefore, you must be satisfied from words, acts, language, and conduct of the party, the adjuster, that he intended to waive any invalidity, and still regard it valid, and this party so accepted it, understood, and acted upon it.

I have been longer than I intended to. I don't know whether I have covered all these requests or not. I will simply leave the matter with you. I think I have gone far enough to let you understand it must appear that Graham had an insurable interest at the time he took out that policy and at the time of the loss, before he can recover anything. If he fails to show that, neither he nor Tilton can recover one cent under this policy, and your verdict must be for the defendant. If you conclude that Graham had an insurable interest, although it may have been less than entire ownership, at the time of the insurance and at

the time of the loss, plaintiff Tilton is entitled to recover whatever insurable interest Graham had at the time the policy was taken out and at the time the loss occurred, according to the evidence you have heard here on the stand. You will bear in mind that there has been concurrent insurance—that is, insurance upon this identical property in three other companies, as appears from the pleadings, to the extent of $3,000. If that has covered the whole, nothing can be recovered here; they must show that they have sustained loss of an insurable interest over and above the amount paid by other insurance companies. If plaintiffs are entitled to recover anything, they are entitled to recover it, with interest from sixty days after the loss occurred, after the property was destroyed. That is in the terms of the policy.

Mr. Muller: We ask for interest from expiration of sixty days after proofs were received. The terms of the policy are that loss is payable sixty days after proofs of loss are furnished.

The Court: Well, then, I will correct myself. Interest can only be allowed sixty days after proofs of loss have been forwarded and received by the company.

The verdict was for plaintiff. The defendant appeals on the following exceptions:

I. That the presiding Judge erred in permitting, against the objection of the defendant, the introduction in evidence of the written agreement, dated February 9th, 1891, between Tilton and Graham, for the purpose of showing the relation which existed between Tilton and Graham in reference to the property described in the policy, for the following reasons: (a) Because it was not proven that the defendant or any of its agents had at any time notice of said contract, its contents, or of any relation existing between Tilton and Graham in reference to said policy. (b) Because the written contract of insurance then in evidence being without any uncertainty or ambiguity, should have been conclu-

sively presumed to be the whole engagement between the parties, and it was error to admit evidence seeking to include under said policy an insurable interest not mentioned in the policy and negatived by its very terms, and of which there was no proof that the defendants or any of its agents had any notice whatsoever. (c) Because said written contract and its contents operated as a surprise to defendant, and said defendant then and there offered to give satisfactory proof to the Court in what respect the failure of plaintiff to make in the complaint the proper allegation in reference to such evidence misled it to its prejudice in maintaining its defense upon the merits.

II. That the presiding Judge erred in permitting, against the objection of defendant, the introduction in evidence by the witness, Graham, of his statement, that after the execution of the said written contract of February 9th, 1891, there was a verbal agreement between Tilton and the witness relative to insuring the property in question, for the following reasons: (a) Because it was not proven that the defendant or any of its agents, at the time of issuing the policy in suit or at any time previous thereto, had any notice of such verbal agreement, or of·any relation existing between Tilton and Graham in reference to the property mentioned in the policy. (b) Because the written contract of insurance then in evidence being without any uncertainty or ambiguity, should have been conclusively presumed to be the whole engagement of the parties thereto, and it was error to admit evidence seeking to include under said policy an insurable interest not mentioned in the policy and negatived by its very terms, and of which there was no proof that the defendant or any of the agents had any notice whatsoever. (c) Because said evidence operated as a surprise to defendant, and defendant then and there offered to give satisfactory proof to the Court in what respect the failure of plaintiffs to make in the complaint the proper allegation in reference to such evidence misled it to its prejudice in maintaining its defense upon the merits.

III. That the presiding Judge erred in permitting, against the objection of defendant, the introduction in evidence by the witness, Graham, of statements made by him to adjusters of several companies interested in the loss, to the effect that Tilton was the owner of the property, and that subsequent thereto the defendant, the American Fire Insurance Company, had required proof of loss, for the purpose of claiming an estoppel against the company to set up the defense made in the answer, for the following reasons: (a) Because it appeared that at the time of the requirement for the furnishing of proofs of loss, the plaintiff, John M. Graham, was fully aware of the contention of the defendant of non-liability, by reason of the fact that the said assured was not the unconditional owner of said property, and that the defendant, in making such requirement, was but in the exercise of its right under the contract of insurance, with no evidence of any intention whatsoever of an abandonment of its rights under said contract. (b) Because the testimony offered was not evidence of any intentional abandonment of the rights of the defendant under the contract, and in no way caused plaintiff to change his position, or suffer any injury, loss or expense, nor was plaintiff induced thereby to act otherwise than he would have done without such requirement.

IV. That the presiding Judge erred in permitting, against the objection of the defendant, the introduction in evidence by the witness, Graham, of conversations, and the witness, Swaffield, his own agent, had between them in reference to the title of the property insured, for the following reasons: Because said conversations were not had in the presence of the defendant or any of its agents.

V. That the presiding Judge erred in permitting, against the objection of the defendant, the introduction in evidence by the witness, Swaffield, of declarations alleged to have been made by said witness to one Fripp, for the following reasons: (a) Because it appeared that said alleged declarations were made in reference to an entirely different trans-

action, to wit: the making of a contract of insurance with the Fire Association of Philadelphia, and that the said Fripp was not in the employ of the defendant, or any of its agents, at the time the policy in suit was issued; and, further, the plaintiff having failed to prove any authority of said Fripp to bind the defendant by any declarations made to him. (b) Because through such evidence it was sought to vary and contradict the explicit terms of the policy in suit. (c) Because knowledge acquired by a clerk in the employ of a local agent, when engaged in a transaction as agent of some other insurance company, is not knowledge of the defendant company.

VI. That the presiding Judge erred in permitting, against the objection of defendant, the introduction of testimony by the witnesses, Marshall and Seibels, to the effect that after the loss, and subsequent to a denial of liability on the ground that Graham was not the owner of the property insured, the said Marshall charged Allen Jones, the local agent of defendant, with knowledge "beforehand" of the fact that Tilton was the owner of the property, and that Jones had said nothing, for the following reasons: (a) Because such evidence was not competent to prove knowledge on the part of Jones of such fact previous to the issue of the policy, inasmuch as no duty in the law rested upon Jones to deny such charge, nor was there any specific charge that the said Jones knew the fact alleged previous to the issue of the policy, the statement of Marshall fixing no particular time as to such knowledge. (b) Because by such evidence it was sought to vary and contradict the explicit terms of the contract of insurance as evidenced by the policy.

VII. That the presiding Judge erred in not granting, at the close of the evidence of plaintiffs, upon the motion of defendant, a nonsuit, upon the following grounds: (a) Because it appeared from the evidence, beyound dispute, that the plaintiff, Graham, was not the sole and unconditional owner of the property mentioned in the policy. (b) Because there was no evidence upon which to base an estoppel

14—48

against the defendant preventing its claim that the policy
was void at its inception. (c) Because the doctrine of
estoppel and waiver is not applicable where the point in
issue is as to the subject of insurance, and the contract is
explicit on that point. (d) Because the plaintiff, John M.
Graham, was, by the retention of the policy without objec-
tion, himself estopped from claiming that it did not contain
the contract of insurance as agreed, or that he was not
bound by its explicit terms. (e) Because if the doctrine of
estoppel was applicable against the defendant, it extended
no further than to cover whatever individual insurable
interest the said Graham may have had in the property,
and for this insurable interest no recovery could be had, for
the testimony conclusively showed that the said Graham
had suffered no injury to that individual insurable interest.

VIII. That the presiding Judge erred in refusing to
charge the jury, as requested by defendant, that the plain-
tiff, John M. Graham, did not, as the representative of
Tilton, have any insurable interest in the property under
the written contract with Tilton, and the alleged verbal
contract as to such insurance.

IX. That the presiding Judge erred in charging the jury
as follows: "That if at the time of issuing of that policy
John Graham had no insurable interest, and you conclude
that the company had no notice of the relation existing be-
tween Tilton and Graham—that Tilton was the owner and
Graham the agent—then I charge you, if Graham had no
insurable interest, and the company had no knowledge of
their relation, plaintiff cannot recover under this policy,
and your verdict should be for the defendant," for the fol-
lowing reasons: (a) Because if John M. Graham had no in-
surable interest in the property, it made no difference what
notice defendants may have had previous to the issue of the
policy, for without such insurable interest the contract of
insurance was a wagering contract, against the policy of the
law, and neither party to it is estopped from showing the
fact. The presiding Judge, therefore, erred in requiring

that the jury, before they could find for the defendant, should conclude not only that the plaintiff, Graham, had no insurable interest, but they should go further, and find that the defendant had no notice of the relation between Tilton and Graham—that Tilton was the owner and Graham the agent.   (b) Because if the defendant company had no knowledge of the relation existing between Tilton and Graham—that Tilton was the owner and Graham the agent—that defendant was entitled to a verdict, whether John M. Graham had any insurable interest or not, for the contract was explicit, and excluded any interest other than that arising from the sole and unconditional ownership of the property by Graham, and the Court, therefore, erred in limiting the defendant's right to a verdict, under these circumstances, only in the event that Graham had no insurable interest.

X.  That the presiding Judge erred in charging the jury as follows: "There is another view, if you conclude that the company had no notice of the relation between Graham and Tilton—that Tilton was the owner and Graham the agent—but if you should conclude that Graham had an insurable interest in this property at the time of the taking out of the policy and time of the loss and destruction of the property, then I charge you, the company is liable to Tilton to the extent of Graham's insurable interest.   I charge it to you upon this principle, that if the company accepted the premium and insured Graham, and it appears that Graham had an insurable interest, it inures under that policy to Tilton, because it would be unjust for the company to assure the property of Graham, take the premium upon the policy, and simply because he didn't have entire and sole ownership of the property to deprive him indemnity to the extent to which he had an insurable interest.   I have had no authority upon that, but I charge you as a matter of law, and let the other Court, if necessary, settle it," for the following reasons: (a) Because such principle would be in open violation and disregard of the right of parties to contract as they see fit.   The express terms of the contract

prohibited any recovery, if Graham was not the sole and unconditional owner of the property, and if at the inception of the contract the defendant had *no* knowledge that Graham was not such owner, the Court should have enforced the contract.

XI. That the presiding Judge erred in his refusal to charge the jury, as requested by defendant, as follows: "That if the jury believe from the evidence that the interest of John M. Graham in the stock of material described in the policy was at the time of the making of the contract other than unconditional and sole ownership, then neither of the plaintiffs can recover, unless the defendant or its agents (unless the condition as to ownership be otherwise waived) had knowledge at the time of the execution and delivery of the policy that the interest of the said John M. Graham was other than unconditional and sole ownership."

XII. That the presiding Judge erred in his refusal to charge the jury, as requested by the defendant, as follows: "That unless the condition as to sole and unconditional ownership be otherwise waived, if the jury believe the testimony of Allen Jones, to the effect that at the time he delivered the policy he had no knowledge of the fact that John M. Graham was not the sole and unconditional owner of the property described in the policy, and further believe that defendant or any of its agents had such notice, then the plaintiffs cannot recover, and the verdict should be for the defendant."

XIII. That the presiding Judge erred in his refusal to charge the jury, as requested by defendant, as follows: "That if the jury believe, from the evidence and the instruction of the Court, that the said John M. Graham individually did have an insurable interest in the property described at the time that the contract of insurance was made, and that the defendant or its agents knew of such individual interest, and, notwithstanding such knowledge, wrote the policy and delivered it to John M. Graham; that neither John M. Graham nor G. H. Tilton can recover in

this action, unless you believe from the evidence that the destruction of said stock or material caused the said John M. Graham actual pecuniary loss; and that if the jury believe that John M. Graham lost no salary by reason of the interruption of the business by reason of said fire, and that said mill is still being operated by the said Graham under said contract with Tilton, that the verdict should be for the defendant against the said John M. Graham, and the said G. H. Tilton can recover nothing by reason of the said individual interest of the said John M. Graham being covered by the policy of insurance."

XIV. That the presiding Judge erred in his refusal to charge the jury, as requested by defendant, as follows: "If the jury believe from the evidence that the defendant or its agents had knowledge previous to the delivery of the policy to the effect that there was no mortgages on the property, and that the loss payable clause was inserted for the purpose of permitting Tilton to control the insurance money," that such information was not knowledge of the ownership of Tilton, and the defendant would not be estopped to set up the defense that the plaintiff, Graham, had not truly stated his interest in the policy, or was not the sole and unconditional owner thereof.

XV. That the presiding Judge erred in his refusal to charge the jury, as requested by defendant, as follows: "That if the jury believe that notice of the ownership by Tilton of the goods was given by Swaffield to Fripp, and further believe that at such time Fripp was acting for the Fire Association of Philadelphia, and not for the American Fire Insurance Company, and further believe that previous to the issue of the policy in question Fripp left the employment of Jones, such notice to Fripp by Swaffield was not notice to this company.

*Messrs. Trenholm, Rhett & Miller* and *John T. Sloan,* for appellants, cite: *Insurable interest:* 36 S. C., 228; 151 U. S., 452. *Testimony to explain policy incompetent:* 26 S.

C., 505; 42 S. C., 8; 39 S. C., 288; 12 Ins. Law Journal, 680; 49 Mo., 578; 115 N. Y., 279; 5 Strob., 21. *Irrelevant testimony:* 19 S. C., 124; 4 Mass., 650; 20 Ins. Law Journal, 655; 53 Ia., 335; 8 Ins. L. J., 361; 18 Ins. L. J., 361; 13 S. E. R., 237; 2 Hill, 463; 37 N. Y., 322; 25 Conn., 444; 13 La., 525; 1 Met., 294; 4 Page, 127; 96 U. S., 527. *Nonsuit:* 12 Ins. L. J., 680; 86 N. Y., 425. *Indemnity of insurable interest:* 86 N. Y., 425.

*Messrs. J. S. Muller* and *John T. Seibels,* contra, cite: *Insurable interest:* 132 N. Y., 49; 45 N. Y., 606; 10 S. E. R., 777; 36 S. C., 266; 95 U. S., 547; 66 Md., 339; 11 S. E. R., 120; 22 Ins. L. J., 94; 93 U. S., 541. *Construction of policy:* 16 Neb., 89; 4 Bradwell, 485; 29 Up. Con., 188; 65 N. Y., 6; 50 N. H., 54; 18 N. W. R., 888; 11 S. E. R., 120. *What notice did defendant have?* 14 S. C., 321; 33 S. C., 233; 37 S. C., 100; 125 N. Y., 57; 135 N. Y., 298; 142 N. Y., 382; 15 S. E. R., 883; 58 Vt., 113. *Waiver and estoppel:* 70 Ia., 600; 15 S. E. R., 883; 93 Ill., 96; 132 N. Y., 45; 142 N. Y., 385; 22 Ins. L. J., 204; 23 Hem., 397; 36 Minn., 112; 37 Mich., 502; 116 N. Y., 117; 96 U. S., 240; 122 N. Y., 578; 68 N. Y., 434; 81 N. Y., 273; 90 N. Y., 16; 84 Ind., 253; 16 S. W. R., 1068; 122 N. Y., 257; 131 N. Y., 488; 13 N. W. R., 355; 81 N. Y., 418; 96 U. S., 240; 53 Wis., 585; 108 N. C., 472; 110 N. C., 472; 111 N. C., 52, 372. *Ground of objection:* 3 Hill (N. Y.), 610; 9 S. E. R., 827; 6 N. Y., 345; 58 Fed. Rep., 532. *Admissibility of declarations to agent:* 132 N. Y., 49; 68 N. Y., 434; 135 N. Y., 298; 142 N. Y., 382; 22 S. E. R., 762. *Communication to clerk is communication to agent:* 125 N. Y., 57; 135 N. Y., 298; 142 N. Y., 382; 37 S. C., 101.

Jan. 8, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendant, on the 5th day of April, 1894, issued to the plaintiff, John M. Graham, its policy of insurance, wherein, for a premium of $15, it agreed to indemnify against loss by fire "his stock of material for

the manufacture of cotton and woolen hosiery, raw, wrought, and in process thereof, while contained in the two-story brick and shingle roof building situated within the walls of the South Carolina Penitentiary, at Columbia, S. C. Any loss that may be ascertained and proved due the assured shall be payable to G. H. Tilton, as his interest may appear." The policy contained the usual printed stipulations of those issued on personal property. Two of these, however, were in these words: "This policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof, or if the interest of the insured in the property be not truly stated herein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss * * * This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership." * * * On the 25th day of April, 1894, the stock of material, valued at more than $5,000, was destroyed by fire, except about $600 worth; thus the loss was about $4,400. There was concurrent insurance—three policies— each for $1,000, which latter was the amount named in the policy issued by defendant. Soon after the fire an agent of the defendant, with agents of the companies which had issued concurrent insurance, were on hand to adjust the loss, or rather losses. G. H. Tilton also appeared on the scene; his home was in the State of New Hampshire. John M. Graham informed the insurance companies at once that G. H. Tilton was the sole owner of the material insured, and that his (Graham's) connection with the hosiery manufactory was superintendent. After some time proofs of loss were submitted. Three of the companies paid up in full, but the defendant company declined to do so. Hence this suit. The complaint alleges the ownership of the property destroyed by fire to be in G. H. Tilton, but that the

same was in the sole custody and control of John M. Graham, under a contract therefor between Graham and Tilton, which included the insurance of the property against loss and damage by fire; that under said contract the said Graham was to receive from said Tilton an annual compensation for his services so long as said contract was of force, and that the said Graham was pecuniarily interested in the preservation and continued existence of said property. The contract for insurance was set out, inclusive of the policy itself, as part of the complaint. In the fourth clause of the complaint was set out the allegation that the insurance company was aware that Tilton owned the property, but that the same was in the exclusive possession of said Graham, and that he had a pecuniary interest in the preservation of said property, and that the policy of insurance was issued by the defendant in the name of the plaintiff, J. M. Graham, with the endorsement in favor of said G. H. Tilton, as his interest might appear, primarily for the benefit of Tilton, but also for the benefit of said Graham as aforesaid, and that the said policy was received by the said plaintiffs in good faith as insuring their interests as aforesaid. In the fifth clause is set out the loss of property by fire on the 25th April, 1894, and plaintiffs' loss thereby. In the sixth clause it is alleged that proofs of loss and interest have been furnished the defendant, and also that all conditions have been truly observed by the plaintiffs. In the seventh clause demand of payment and its refusal are set forth.

The answer admits that the property destroyed by fire was covered by the policy issued by it; that Tilton was the owner thereof; that said property was in the exclusive possession of Graham; that there were three other policies of concurrent insurance, each for $1,000, on said property; that proofs of loss have been furnished to it, and demand made for payment of policy. And affirmatively answering, the defendant alleges that the plaintiff, John M. Graham, in whose name the policy was issued, was bound by the express

conditions, covenants, and promissory warranties in the policy named—two of which was (1) that the entire policy should be void if the insured has concealed or misrepresented any material facts and circumstances connected with the insurance, and (2) that the entire policy should be void if the interest of the insured be other than unconditional and sole owner; and that John M. Graham neither fully disclosed the material facts and circumstances connected with the insurance nor was he the unconditional and sole owner of said property.

The action came on for trial before the Hon. I. D. Witherspoon and a jury at the fall term, 1895, of the Court of Common Pleas for Richland County. After plaintiffs had closed their testimony, a motion for nonsuit was made and refused. The verdict was in favor of plaintiffs for full sum complained for, including interest. Therefrom the defendant appealed to this Court on many grounds and subdivisions thereof, which will now be disposed of by us. The report of the case will include the exceptions, and also the charge of the presiding Judge. We will consider them as embraced in these divisions: *First.* Did the Circuit Judge err in admitting the testimony objected to by the defendant? *Second.* Was the Circuit Judge in error in refusing the defendant's motion for a nonsuit? *Third.* Were the refusals to charge and the charge itself erroneous in the particulars complained of?

I. As to the first ground of appeal. While the plaintiff, J. M. Graham, was being examined on his own behalf and that of his coplaintiff, Tilton, his counsel asked him if the paper, containing the agreement between himself and G. H. Tilton, touching the control and management of the hosiery mill by Graham as its superintendent, was the contract between them as to these matters. To this question the defendant promptly objected, because it was not in response to any of the issues raised by the pleadings, inasmuch as the only reference to such contract in the complaint was a conclusion of law; that the defense was surprised at the contents of the paper, and second, that

the contract of insurance sued upon is in writing, and is clear and explicit in its terms. The defendant objects to any parol evidence being introduced to vary or contradict the clear and explicit terms of the contract, or any evidence to do so. To understand the ruling of his Honor, the Circuit Judge, whereby he admitted this testimony, it is important that we should understand his environments. In the first place, the Circuit Judge was bound to keep in his mind that, this being an action to recover upon a policy of insurance of personal property destroyed by fire, while such policy was of full force, the laws of this State, as fixed by the decisions of our court of last resort, hold: "Insurance is not an incident to the thing insured, *but indemnity or compensation to the person insuring for the loss which he sustained*" (italics ours). *Annelly* v. *DeSaussure*, 26 S. C., 505; *Pelzer Manufacturing Co.* v. *Sun Fire Office*, 36 S. C., 266, 267; *Carpenter* v. *Insurance Co.*, 16 Peters, 496; *Imperial Fire Insurance Co.* v. *County of Coos*, 151 U. S., 452. The contract of insurance sued upon, by its express terms, provided that any loss to be recovered by the assured should be payable to G. H. Tilton, "as his interest may appear;" and this is the only reference to G. H. Tilton in the entire policy of insurance. Inasmuch as the policy of insurance failed to indicate what was the interest of G. H. Tilton in the personal property insured against loss by fire, it is very manifest that if such interest of G. H. Tilton is to be made to appear, it must be done by evidence outside of the terms of the policy itself. Then, again, the policy itself fails to indicate what meaning the parties to it intended should attach to the word "interest." In policies of insurance of personal property, the word "interest" is sometimes held to mean "insurable interest"—1 Bouvier Law Dictionary. But it may be that another meaning or other meanings may be ascribed to it. By the pleadings in the case at bar it was distinctly announced that G. H. Tilton was the actual owner of the personal property which was insured, but that the same personal property was in custody and control of the

plaintiff, J. M. Graham, under a contract with the said Tilton. Hence it seems to us that it was a pertinent inquiry as to what were the terms of that contract. We are at a loss to see any controlling influence in the objections of the defendant to the introduction in evidence of such a contract, for it would in no wise infringe upon the rights of the defendant, that Tilton and Graham had made a contract between themselves as to this property, which was to last from the year 1891 until twenty years thereafter, in the light of the contract for the insurance of this personal property, wherein it was alleged that it was the property of J. M. Graham, but coupled with the distinct provision that any loss under the policy to be recovered by J. M. Graham, "should be payable to G. H. Tilton as his interest may appear." To say that the introduction of such testimony would serve to vary or contradict the written terms of the policy of insurance itself will not do, for the parties to the contract of insurance had it in their power, when such contract was entered into, to make clear what they meant by the use of the words just quoted, and they did not do so. The Circuit Judge in construing this policy of insurance could not tell what the parties to it intended; hence the necessity of testimony to show what Tilton's interest in such insured property was. This exception is overruled.

(b) The second ground of appeal. When the witness for plaintiffs, J. M. Graham, was asked to state how he came to insure the property after the year 1891—the date of his contract with G. H. Tilton—the defendant objected, upon these grounds: *First*, that the defendant had no notice of such verbal agreement or of any relation subsisting between Tilton and Graham in reference to the property mentioned in the policy; *second*, because there was no ambiguity or uncertainty in the contract, and it should have been conclusively presumed to be the whole engagement of the parties thereto, and it was error to admit evidence seeking to include under said policy an insurable interest not mentioned in the policy, and negatived by

its very terms, and of which there was no proof that the defendant had any notice; and *third*, on the ground that defendant was surprised thereby, and misled to its prejudice. Again, it is our duty to remember that the Circuit Judge had the policy before him, and that such policy contained the fatal words, "any loss, &c., to be paid to G. H. Tilton as his interest may appear." What G. H. Tilton was referred to? The policy failed to show who he was. What was the interest of G. H. Tilton that might be made to appear? The policy is silent. What business corporation guided by intelligence could afford to remain ignorant of who G. H. Tilton was, and of what interest he might be possessed? This policy by its very terms necessitated a recourse to proofs, *de hors* the policy itself, to show these facts. The plaintiffs accompanied their complaint in this action with a copy of this policy of insurance. The defendant had notice of these terms by the complaint itself, and it is too late to talk of a surprise by which they were misled to their prejudice by allowing this testimony to be introduced. This exception is overruled.

(c) To make plain the question raised by this the third ground of appeal, it may be well to state the facts upon which it is based. The policy of insurance sued upon, as we have before stated, stipulated that the defendant did insure against loss by fire the personal property as the property of J. M. Graham, but with the provision that "any loss that may be ascertained and proved due the assured shall be payable to G. H. Tilton as his interest may appear." That said Graham, when the adjusters of the different insurance companies which had policies outstanding on said property when destroyed by fire, appeared in the city of Columbia, S. C., immediately after the fire, told them that the property was owned by G. H. Tilton, and that thereupon the said adjusters required G. H. Tilton to repair to his home in the State of New Hampshire in order that he might furnish proofs of loss from his own books, and that some weeks afterwards said

adjusters were notified that Tilton had the proofs of loss, as ascertained from his own books, ready in Columbia for their inspection, and that thereafter the said adjusters returned to the said city of Columbia, S. C., and upon said proofs from the books of Tilton being inspected by them, they, the adjusters, directed the said J. M. Graham to make up proofs of loss, which he did; and that while three companies paid up their losses, the defendant refused so to do. Upon these facts the plaintiffs desired to predicate the proposition that the defendant was thereby estopped by its conduct to deny the validity of plaintiffs' claim for the insurance money under the policy sued upon. The witness, J. M. Graham, was asked to state these facts, but the defendant objected on the grounds: *first*, that at the time of the occurrence of which he was about to testify, the said Graham was fully apprised of the purpose of the defendant to contest any liability under this policy of insurance by reason of the fact that he was not the unconditional owner of the property insured, and that the defendant in making its requirement of proofs of loss was but in the exercise of its rights under its contract, with no evidence of the abandonment of such defense; and *second*, because the evidence offered did not show any intentional abandonment of his right to hold to the contract of insurance, and in no way caused the plaintiffs to abandon their position or suffer any injury, loss, &c. We cannot see why the plaintiffs should not be allowed to show by their proofs that the defendant by its conduct was estopped from contesting the plaintiff's right to recover under the policy. We venture no opinion, for under the law we are allowed to express no opinion as to the sufficiency of this testimony to establish this estoppel. The Circuit Judge was only concerned as to its admissibility, and he held it was competent. We see no error here. Besides all this, the very grounds of objection only go to the sufficiency of the testimony, and of this the Circuit Judge could express no opinion.

(d) The fourth ground of appeal relates to the objection

of the defendant to the witness, Graham, stating what conversations he had with, or what directions he, Graham, gave to Mr. W. C. Swaffield, who procured for him the policy sued on, on the sole ground that the defendant was not present when such conversation or direction occurred. The defendant is a corporation, but we suppose the appellant means to say the corporation was not present by any of its agents. His Honor only admitted this testimony upon the assumption, no doubt, that while no such agent might have been present to hear the conversation or direction in question, yet it was afterwards communicated to the agent of the defendant. Mr. Graham did not affect this insurance in person, but through Mr. Swaffield, as his agent. Under the explanation just made, we see no objection to the testimony.

(e) The next, the fifth ground of appeal, relates to the competency of the testimony of Mr. Swaffield, as the agent of the plaintiffs, in detailing his declarations to one Mr. Fripp, who was connected with the fire insurance agency of Mr. Allen Jones, from which agency the policy now sued on was obtained. We will state the circumstances so that we may more correctly pass upon the ruling of the Circuit Judge on this point. Allen Jones operated an insurance agency in the city of Columbia, S. C. He had in his employment a young man, Mr. Fripp, to whom was assigned many duties incident to the issue of policies of fire insurance, but not to the extent of countersigning the same—that part of the work was always performed by Mr. Jones himself. While Mr. Fripp was employed during the month of March, 1894, Mr. Jones represented the defendant company, and also another company, the Fire Assurance Company of Philadelphia. Upon the application of Mr. Swaffield, as the agent of J. M. Graham, to Mr. Fripp for $1,000 insurance on the property now under discussion, Mr. Fripp was told by Mr. Swaffield exactly how Mr. Tilton stood to this property, viz: that he was the owner, and that J. M. Graham was his superinten-

dent in charge of the property.    The policy applied for
was issued by the said Fire Assurance Company of Phila-
delphia; but within a short time, say a week or ten days, this
company, from its home office in Philadelphia, ordered the
policy cancelled, which was done; and early in the month of
April a policy was issued by Mr. Jones, as agent in the de-
fendant company.    Mr. Fripp left Mr. Jones' employment
on March 31st, 1894.    Mr. Swaffield could not state whe-
ther he had told Mr. Jones the facts he had communicated
to Mr. Fripp; he was impressed that he had.    But it was
desired to have Mr. Swaffield testify as to the communica-
tion he had made to Mr. Fripp in regard to Tilton's owner-
ship of the property, and that this was the cause of the
insertion of the clause in the policy that all losses should
be paid to Tilton, as his interest might appear.    Judge
Witherspoon on this point ruled as follows: "Under the
allegations of the complaint, and the terms of the policy
issued to J. M. Graham, I hold, under the authority of
*Pelzer Manufacturing Company* v. *The Sun Fire Insurance
Company*, 36 S. C.; that it is competent for the plaintiff to
offer evidence to show that, at the time of the issuing of
the policy and the receipt of the premium by the company,
the agent of the company issuing the policy knew the re-
lation then existing with reference to the property in dis-
pute between Graham and Tilton.    I further hold that the
admission of such testimony does not violate the general
principle or rule, that a written instrument cannot be al-
tered or the terms thereof varied by parol testimony."    Mr.
Chief Justice McIver, in his elaborate opinion in the case
of *Pelzer* v. *Sun Ins. Co.*, 36 S. C., 333, quotes with ap-
proval this language used in *Menck* v. *Home Insurance
Company*, 9 Am. St. Rep., 160 (76 Cal., 51): "The tendency
of the decisions is plainly to hold all these conditions waived,
which to the knowledge of the agent would make the policy
void as soon as delivered.    Otherwise, the company would
knowingly receive the money of the applicant without value
returned, and the whole transaction would be a palpable

fraud." Hence, if this defendant company knew as a fact that Tilton was the actual owner of this property, and that J. M. Graham held it as his superintendent only, although it was recited in the policy that it was the property of Graham, coupled with the stipulation that all damages thereunder should be payable to Tilton, as his interest might appear, then the defendant company was bound to make good any loss under such contract; for otherwise, such "company would knowingly receive the money" of the applicant, without value returned, and the whole transaction would be a palpable fraud. And at page 269 of the same case, the Chief Justice of this Court observes: "Insurance companies or their agents are, of course, presumed to know what facts and circumstances are material to the risk offered much better than the persons who are applying for the insurance; and if they choose to accept the insurance without inquiry, and when a loss occurs it appears that some fact which the insurance companies may regard as material to the risk was not communicated by the insured, common honesty and fair dealing forbid that this shall operate as a forfeiture of the policy, unless it also appears that the insured either knew at the time, or ought to have known, that such fact was material. Inasmuch as insurance companies, when applied to for insurance, have the right to make, and, as a matter of fact, do make, the fullest and most minute inquiries, when the application is in writing, the insured has a right to assume, when no such inquiries are made, either that the insurance companies or their agents are fully acquainted with all the facts material to the risk or that they do not regard the facts as are not stated as material." The agent, Mr. Allen Jones, had just issued a similar policy to the same party, on the same property, in another company, which had just been cancelled, acting in the issuing of such policy through his clerk, Mr. Fripp, to whom Mr. Swaffield, as the agent of the plaintiffs, had made full disclosure as to Tilton's ownership and as to Graham's connection therewith, and on the 5th day of April, 1894, not a

month after the issuing of the first policy, the same agent, Mr. Jones (who was a fully commissioned local agent of the defendant company), was about to issue a new but similar policy to the same parties, on the same property, in another company, it became important to the plaintiffs to show what notice such agent had given him touching this property, so far as its ownership was concerned. The testimony was relevant and admissible. It cannot be said that Mr. Jones, as agent, was not bound by the information his own clerk had received in the due course of his employment by him. All this taken in connection with the charge of the presiding Judge, "In order for notice to Fripp to be binding on this company, it must appear that Fripp was Jones' agent at the time, and that he had authority to bind the company in the way indicated." This ground of appeal is dismissed.

(f) The sixth ground of appeal cannot be sustained. It was perfectly competent for the plaintiffs to show, if they could, that the defendant company admitted notice of Tilton's ownership of the property at the time the policy was issued, as it was before stated, and to do this, no more efficacious mode existed than of showing that the agent, Mr. Allen Jones, who issued the policy, admitted that fact. This was the tendency of the testimony of Col. Marshall and Mr. Seibels, the two witnesses who were introduced for this purpose by the plaintiffs, and whose testimony was objected to. As to the sufficiency of this testimony, that was quite another matter, and is not, and cannot be, before us.

II. The seventh ground of appeal questions the correctness of the refusal of the Circuit Judge to grant a nonsuit. First. "Because it appeared from the evidence beyond dispute that Graham was not the sole and unconditional owner of the property mentioned in the policy."

Granted that the evidence and admissions established the fact that Graham was not the sole and unconditional owner of the property insured, this would not necessarily defeat the plaintiffs, for there was testimony before the

Court going to show that the defendant well knew, or was bound at its peril to know, that Tilton was the unconditional owner of that property, at the very moment it issued its policy with a contrary recital therein, and yet, after that knowledge, received the preminm for this insurance. There was evidence before the Court going to show that Graham had an insurable interest in this property. Second. "Because there was no evidence upon which to base an estoppel against the defendant, preventing its claim that the policy was void from its inception." The estoppel here involved is an estoppel by conduct. This Court, in *Bull* v. *Rowe*, 13 S. C., 370, thus defined it: "As we understand it, estoppel by conduct is when one party has been induced by the conduct of the other to do or forbear doing something which he would not or would have done, but for such conduct of the other party. Bigelow on Estoppel, 480.

The conduct which is claimed to operate as an estoppel must have induced action, the disavowal of which would be inequitable, and which, therefore, the party who holds out the inducement is estopped from disavowing. There is no estoppel without fault to the injury of another." Now in the case at bar, there was strong testimony going to show that the defendant knew when it issued this policy of insurance all the facts relating to the ownership of the property by Tilton, and not by Graham, which latter was set out in its policy; and that after this knowledge, that full value was paid for this insurance; that the plaintiffs intended this property to be insured against loss by fire; that the property had been destroyed by fire; and, therefore, could not now be insured. It occurs to us that there was some testimony, to state it most mildly, which it was proper for the jury to pass upon, and which, if true, would estop the defendant from claiming its policy void.

Third. "Because the doctrine of estoppel and waiver is not applicable when the point in issue is as to the subject of insurance, and the contract is explicit on that point." We might be content to quote the words of defendant's at-

torneys in this appeal: "There is no magic in a contract of insurance; it must be judged of and construed like all other contracts between man and man." Although we here state that this language is quoted from appellant's argument, yet it is but just to say it is there recognized and reproduced from the opinion of Chief Justice McIver, in *Pelzer &c.* v. *Sun &c.*, 36 S. C., 213. This ground of appeal is dismissed.

Fourth. "Because the plaintiff, John M. Graham, was, by the retention of the policy without objection, himself estopped from claiming that it did not contain the contract of insurance as agreed, or that he was not bound by its explicit terms." We cannot regard this proposition as good ground for a nonsuit. Graham retained the policy of insurance, as issued by the defendant, with full faith that he had carried out the directions of his employer, Tilton, because he saw from the policy that the property was accurately described, and an indemnity promised, in case of its destruction by fire, to be paid to the true owner, Tilton, thereby protecting to him the property he was, by his contract with Tilton, to manage for twenty years at a remuneration liberal in its terms (for it was to last during his life, and if he should die, survive to his wife during the twenty years provided for). Graham is to-day satisfied with the contract of insurance, and in this action seeks its enforcement. We cannot see how the application of the doctrine of estoppel can be made to apply to him.

Five. "Because, if the doctrine of estoppel was applicable against defendant, it extended no further than to cover whatever individual insurable interest the said Graham may have had in the property, and for this insurable interest no recovery could be had, for the testimony conclusively showed that the said Graham had suffered no injury to that individual insurable interest." We have heretofore held that there being testimony before the Court upon which, if true and sufficient, the doctrine of estoppel might be successfully applied as against the contention of the defendant, that its policy of insurance was void, no more need now be said on

that part of this ground of appeal. So far, however, as the insurable interest of Graham is affected by this ground of appeal, we cannot agree with the appellant, for the reasons we shall now set forth in our treatment of the next ground of appeal. We find no fault with the refusal of the Circuit Judge to grant a nonsuit.

III. We will next consider the alleged errors of the Circuit Judge in his charge to the jury. First. The Circuit Judge erred in his refusal to charge that Graham had no insurable interest in the property insured under his written and verbal contract with Tilton. If we were to take this proposition literally, it might well be said that the appellant had sought a charge from the presiding Judge upon the facts, which, of course, the Judge could not do. But we will assume that the appellant meant to say that if the facts are established as set out in the contract in writing between Tilton and Graham, and also as embraced in the oral agreement between the same parties, then the question is raised, that, under such facts, Graham had no insurable interest. The Circuit Judge, in his charge to the jury, made these quotations from 1 May on Insurance, section 80, p. 144: "Whoever may be fairly said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject-matter of insurance, whether that advantage enures to him personally or as the representative of the rights or interests of another, has an insurable interest." And from the conclusion of the same section, the Circuit Judge quoted these words: "Persons charged either specifically by law, custom or contract with the duty of caring for and protecting property in behalf of others, or having the right to so protect such property, though not bound thereto by law, or who will receive benefit from the continued existence of the property, whether they have or have not any title or estate, or any lien upon or possession of it, have an insurable interest." In Rapalji & L. Law Dict., it is said: "In the law of insurance, a person is considered to be interested in property when the

destruction or injury of the property would expose him to pecuniary loss;" and quite an array of authorities is cited in support of this enunciation of the law. By reference to the contract made between Tilton and Graham in February, 1891, it will be seen that twenty years term of service as superintendent is provided for Graham at an annual salary, after the year 1891, of $2,500, and that in case he dies before the period of twenty years, his wife is to be paid $1,200 per year; and in case of his or her death during that period, his children shall be paid $1,200 per annum. Also, that if Tilton wishes to discontinue business during that period, important privileges as a purchaser are secured to Graham. By parol, it was agreed between Tilton and Graham that the latter should insure the property. It seems very clear to us, that there was an insurable interest in Graham as well as Tilton in this property. It can make no difference that, after the property was destroyed by fire, Tilton re-established the hosiery business and continued Graham's salary. It must be remembered that he has secured $3,000 of the concurrent insurance on this property, and it is not at all unlikely that he acted as if this policy was cash in hand, by anticipating its payment. But be these last matters as they may, Graham had an insurable interest. Suppose, for instance, that by the destruction of insured property, the mill, too, had been destroyed without any insurance, and that it had been owned by Tilton, and the loss had been so great that Tilton was unable, from the lack of means, to rebuild and re-equip his mill, although the insurance money recovered on the personal property was sufficient to re-establish a hosiery mill in leased quarters, would not Graham have some rights, under his contract with Tilton, he could enforce in equity? The presiding Judge was not in error here.

Second. So far as the ninth ground of appeal is concerned, it seems to us to present an abstract question of law.

If Graham had no insurable interest, and the defendant, when it issued its policy in Graham's name, as

owner, with the loss payable to Tilton, as his interest may appear, and it did appear that the company knew he, Tilton, was the owner of the property, though it was in the name of Graham, as owner, how did the Judge commit any error in the charge? We cannot see. The contract itself provided for Tilton being paid the whole insurance money; it is not a case of a policy being taken out by a person not the owner, with no reference to the interests of the owner, but quite the contrary. "Let our just censure attend the true event." This ground of appeal is dismissed.

Third. The tenth ground of appeal will not be considered by us, because it is certainly an abstract proposition of law. The verdict rendered by the jury shows conclusively that they were not influenced by it in any manner whatsoever, for they, the jury, found the exact amount due under the policy, viz; the sum of $1,000, and interest thereon after sixty days from the notice of proofs of loss, thus showing conclusively that they paid no attention to any insurable interest of Graham to be paid to Tilton, so far as the value of that insurable interest of Graham was concerned.

Fourth. The eleventh ground of appeal is next in order. A comparison of the terms of the request to charge with the actual charge of the Judge will show that he protected the defendant in these matters here embraced fully and effectually. We overrule this ground of appeal.

Fifth. The twelfth ground of appeal is fully covered by the Judge's charge, and is, therefore, dismissed.

Sixth. The thirteenth ground of appeal seeks to impute error to the Circuit Judge by his refusal to make the charge as requested. In effect, it states that if the jury conclude that John M. Graham did have an insurable interest in the property covered by the policy, and that the defendant wrote its policy notwithstanding its knowledge of this fact, that neither Graham nor Tilton can recover unless the jury believes that the destruction of such property caused John M. Graham pecuniary loss; and if the jury believe that John M. Graham lost no salary by reason

of the destruction of the business by fire, and that said mill is still operated by Graham under his contract with Tilton, neither Tilton nor Graham can recover under the policy. The Judge acted very wisely in refusing to make this charge, for it did not cover the issues raised in this action. If Graham had insurable interest in this property, and he obtained a policy of insurance thereon by which all loss was to be paid to Tilton, its owner, what difference did it make to this company that Tilton provided a new stock for the hosiery mill, whereby Graham was enabled to still earn his salary? Besides, as we remarked before, a Judge can only fairly and justly be expected to make his responses to requests to charge where the same practically affect the issues which are on trial in the action. This ground of appeal is dismissed.

Seventh. The fourteenth ground of appeal complained of the refusal of the Circuit Judge to charge as requested by the defendant as set out in this ground of appeal: "If the jury believe from the evidence that the defendant or its agents had knowledge, previous to the delivery of the policy, to the effect that there was no mortgage on the property, and that the loss payable clause was inserted for the purpose of permitting Tilton to control the insurance money, that such information was not knowledge of the ownership of Tilton, and the defendant would not be estopped from setting up the defense that plaintiff, Graham, had not truly stated his interest in the policy, or was not the sole and unconditional owner thereof." We think the Circuit Judge in his general charge covered this point. He explained what was actual notice and what was constructive notice, and he was careful to explain to the jury the issues as raised by the pleadings, but was equally as careful to refrain from weighing testimony for them. A Circuit Judge must necessarily observe great care that in his charge, whether on requests or not, he does not narrow the inquiry into the facts by the jury. There was direct testimony before the jury that the agent of the defendant

had both actual and constructive knowledge of the owner-
ship of Tilton of this property. The Circuit Judge very
wisely declined, by refusing this charge, to appear to pass
upon the facts by saying what would be the effect of all the
testimony upon the fact of knowledge, or of all the testi-
mony added to a constructive notice as to this knowledge
of ownership. All that litigants can demand is that the
Circuit Judge shall faithfully expound the law of the case,
and if in his general charge, which in effect covers specific
requests, he can better do this than in a direct answer to a
specific request, it is not error. This ground of appeal is
dismissed.

Lastly. The fifteenth ground of appeal will be considered.
So far as this ground of appeal is concerned, we feel that
the appellant has overlooked the restrictive words in the
Judge's charge touching the effect given, or to be given,
Mr. Swaffield's statement to Mr. Fripp. In our notice of
this matter in a previous part of this opinion, we have taken
consideration of it, quoting the Judge's charge on the point.
We do not think in the light of that quotation from the
Judge's charge there is any practical question left open.
This ground of appeal is dismissed.

It is the judgment of this Court, that the judgment of
the Circuit Court be affirmed.

MR. CHIEF JUSTICE MCIVER, *dissenting*. I dissent; but
as I am unwilling to delay the filing of this opinion by
taking the time necessary to write out my views, I must
content myself with simply indicating the points upon
which I differ from the majority of the Court, viz: 1st, as
to the construction and effect given to that clause in the
policy providing that the same shall be void if the assured
was not the sole and unconditional owner of the property
insured. 2d, as to the views presented as to the competency
of the testimony as to what the clerk, Fripp, was told in
regard to the interest of Tilton in the property insured. 3d,
as to the views presented in regard to the question of estop-

pel.   4th, as to the views presented in regard to Graham's insurable interest in the property insured.